IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ASCENTIUM CAPITAL LLC,

        **Plaintiff,**

**vs.**

TED LITTELL, TIMOTHY LITTELL,
and WHITE KNIGHT LIMOUSINE,
INC.,

        **Defendant.**

Case No. 2:20-cv-4215-NKL

## ORDER

Plaintiff Ascentium Capital asks the Court to Sanction Defendants Ted Littell, Tim Littell, and White Knight Limousine, Inc., for allegedly: misrepresenting evidence; lying in deposition testimony and discovery responses; destroying unfavorable evidence; and disobeying court orders. *See* Doc. 56 (Motion for Sanctions). The Court held an evidentiary hearing on November 17, 2021. Ascentium's motion is GRANTED IN PART AND DENIED IN PART. Ascentium has not established that Ted Littell or White Knight Limousine committed sanctionable offenses. However, Ascentium has established with clear and convincing evidence that Defendant Tim Littell has repeatedly and intentionally misrepresented evidence in an improper attempt to strengthen Defendants' case. The Court also finds that Tim Littell has lied to the Court in an attempt to cover up his previous misrepresentations. Due to the serious nature of this misconduct, the Court: (1) orders Tim Littell to pay all reasonable fees Ascentium has spent because of his misconduct; and (2) strikes all of Tim Littell's pleadings and will enter default judgment against him. Ascentium must file proof of their reasonable fees to this Court within four weeks; and

1

Ascentium has four weeks to provide evidence of the current amount of damages to be assessed against Tim Littell.

## I.      Background

### A.      Ascentium's Lawsuit

Ascentium alleges that it provided White Knight with several loans to purchase vehicles. *See generally* Doc. 1 (Complaint).  Defendants Tim and Ted Littell acted as guarantors of these loans.  *Id.*  The vehicles Defendants purchased, including multiple busses, were used as collateral for the loans.  Ascentium alleges that Defendants defaulted on these loans when they failed to make payments in the spring of 2020.  On May 24, 2020, Ascentium repossessed busses from White Knight's lot because of the alleged default.   In their answer, Defendants stated that Ascentium failed to properly mitigate their damages.  Doc. 6 (Answer), Aff. Def. 4.  And both Tim and Ted Littell testified during their depositions that White Knight's busses were damaged during repossession.  *See* Doc. 57-3, (Tim Littell Deposition Transcript.), at 59-65; Doc. 57-8, (Ted Littell Deposition Transcript), at 125-151.

### B.      Ascentium's Request for Sanctions.

Ascentium alleges that Defendants have committed multiple sanctionable offenses.  First, Ascentium alleges Tim Littell attempted to manufacture evidence to support Defendants' affirmative defense that Ascentium failed to mitigate its damages.  Specifically, Ascentium argues that Tim Littell misrepresented, in deposition testimony, and Defendants misrepresented in discovery responses, that Tim Littell had received photographs and a note from an anonymous source after the busses were repossessed that showed the busses were damaged.  Ascentium argues that Tim Littell never received photographs or a note from an anonymous source.  Rather, he

produced old photographs of damaged busses and during discovery lied about their origin in an improper attempt to bolster Defendants' affirmative defense.

Additionally, Tim Littell stated in his deposition that there was a video of the repossession that showed Ascentium damaged White Knight's busses. Doc. 57-3, at 65-73. Defendants have not produced the videotape and claim it no longer exists. Ascentium argues that either Tim Littell lied in his deposition about having seen this video, or Defendants destroyed the video because it showed no damage occurred during repossession.

## II.    Legal Standard for Sanctions[1]

District Courts have the inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). These sanctions can include requiring the sanctioned party to pay the opposing parties' attorney's fees, dismissing a case, or entering a default judgment. *Id.* at 45 ("dismissal of a lawsuit . . . is within the court's discretion . . . Consequently, the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power as well.") (internal citations omitted); *see also Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001) ("When a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the Court . . . striking a party's pleadings, thereby resulting in a default judgment, is within the range of appropriate sanctions when a party engages in a pattern of deceit by presenting false and

---

[1] Because the Court finds Tim Little's conduct is sanctionable under the Court's inherent authority, it will not consider whether it is sanctionable under Federal Rules of Civil Procedure ("FRCP") 26(g) for filing unreasonable discovery responses; 37(b) for failing to comply with a Court order; and 37(e) for destroying evidence or unreasonably letting it spoil. S*ee Chambers*, 502 U.S. at 51. Further, because there is not clear and convincing evidence the other Defendants acted in bad faith the Court will not sanction them under FRCP 37(b), or 37(e). And the Court will not sanction the other Defendants or Defense Counsel under FRCP 26(g) because there is not clear and convincing evidence Defense Counsel acted unreasonably when certifying the discovery responses.

3

misleading testimony under oath") (citing *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir.1999)).

Before a Court can dismiss a case, or enter a default judgment, as a sanction under its inherent powers it must find that there is clear and convincing evidence of bad faith conduct. In *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995), the D.C. Circuit held that for a court to use its inherent powers to dismiss a case, or enter a default judgment, the Court must find by clear and convincing evidence that the offended party acted in bad faith and that lesser sanctions were not sufficient punishment. In *Martin v. DaimlerChrysler Corp*, the Eighth Circuit implicitly adopted this approach. 251 F.3d 691, 694-95 (8th Cir. 2001) (stating the district court made the "required findings" laid out in *Shepherd*).

Establishing clear and convincing evidence "is a greater burden than preponderance of the evidence . . . but less than evidence beyond a reasonable doubt." *Clear and Convincing Evidence*, Black's Law Dictionary (11th ed. 2019). Additionally, "bad faith" has many definitions, but at bottom a court must find that a party acted with a dishonest or wrongful motive. *See Bad Faith*, Black's Law Dictionary (11th ed. 2019) ("Dishonesty of belief, purpose, or motive"); *Am. States Preferred Ins. Co. v. McKinley*, No. 07-0584CV-W-NKL, 2009 WL 1139122, at *5 (W.D. Mo. Apr. 28, 2009) ("A finding of 'bad faith' equates to a finding of 'wrongful motive, actual intention to inflict harm or intentional wrongdoing of an act.'" (collecting sources)). Thus, before the Court can sanction any Defendant it must find clear and convincing evidence that the Defendant acted with a wrongful motive and that a lesser sanction would be an insufficient punishment.

## III. Findings of Fact

### A. Tim Littell's Deposition

Defendant Tim Littell sent photographs of a White Knight bus to Defense Counsel to share with Plaintiff's Counsel shortly before his deposition. Doc. 63-1 (Email from Tim Littell to Defense Counsel); Doc. 57-1 (email from Defense Counsel to Plaintiff's Counsel). These photographs show scratching on the bus, a detached bumper, corroding of the underneath of the bus, and damage to the front of the bus. Doc. 57-2 (Bus Photographs).

At his deposition, Tim Littell stated he received these photographs in the mail from an anonymous source after the busses were repossessed. Doc. 57-3, at 59:4-10. Specifically, he stated, "Last summer, I was mailed some pictures of that bus that had been damaged because it was sitting in a lot apparently in St. Louis and a former -- I don't know if it was a former employee or a previous customer, but they sent me photos of that bus that had been damaged that was sitting in a lot in St. Louis someplace." *Id.* at 59:4-10. He was asked, "Who was the person that sent you the photos"; he answered, "I don't know." *Id.* at 59:11-13. Tim Littell was asked, "So did you pull up the photos and scan those and send those to [Defense Counsel] this morning"; he answered, "Yes. It wasn't this morning it was a few days ago." *Id.* at 63:15-18. Defense Counsel also testified that the photographs, "are what I emailed to [Plaintiff's Counsel] this morning." *Id.* at 61:11-12. Later in the deposition, Plaintiff's Counsel confirmed, "So a stranger saw a White Knight bus in a lot, and another White Knight bus being towed, and thought it was worth their time to take a picture and send it to you"; Tim Littell answered, "Apparently so." *Id.* at 63:3-7.

He was asked if "the photos showed that [the bus] had significant damage to it"; he answered, "The photos showed that it had significant body damage to it . . . . The bumper had been damaged significantly. The side of the passenger side had been damaged significantly. The rear of the bus had some damage to it, as well." *Id.* at 59:14-20. Tim Littell was asked, "Why did you think that these photographs were so important to pull up in preparing for this deposition, if you

didn't review anything else." *Id.* at 64:13-16. He answered, "I just thought they would be helpful." *Id.* at 63:20.

Tim Littell also testified that a note came with the photographs that said, "Here's a picture of your busses that are sitting in a lot in St. Louis. What happened to these busses? They look extremely damaged." *Id.* at 65:12-17. He stated the note also said there was "another bus being pulled in by a tow truck that said 'White Knight Coaches' on the side of it." *Id.* at 60:21-23. He was asked, "How did you have the photos to send to [Defense Counsel] this morning, but not the note?" *Id.* at 63:11-12. He answered, "I don't think I have the note actually. I think they were in a separate folder." *Id.* at 63:13-14. He was asked, "Do you know where that note is that was included in that mail, where is it today"; he stated, "I may still have it, but I will look for that." *Id.* at 62:14-17.

At the deposition, Tim Littell also stated, "after we discovered that the busses were missing from our lot in Columbia, I went back and reviewed the video tape from our security cameras and noticed, in fact, that the people did drive off with the busses, and the one bus was actually towed off the lot as the note suggested." *Id.* at 65:18-24. He said this video footage showed that, "there were several people working on these busses trying to get them started, and they were spraying starting fluid, what appeared to be starting fluid into the engine, and they were smoking so badly that I am certain that the one engine was damaged to the point where it was no longer able to run, and so I'm assuming that's why the tow truck had to tow the one. So it was really kind of a comedy of errors to watch, to be honest with you." *Id.* at 66:17-67:2.

Littell was asked when he last saw the video and stated:

A: It's been several months.
Q: About how many, though?
A: Oh I don't know, more than three.
Q: Could it have been more than five?

6

A: Probably not. *Id.* at 68:17-23.

Littell stated he was "pretty sure" he still had the video tape and repeatedly stated he would need to go back and check the tape. *Id.* at 66-73.

## B. Discovery Responses

After the deposition, Ascentium asked Defendants to "Admit that the photographs sent by Defendants' counsel to Plaintiff's counsel in an email dated April 12, 2021, are true and accurate representations of the physical photographs that Tim Littell received anonymously in the mail in summer of 2020." Doc. 57-4 (Defendants' Answer to Ascentium's Fourth Request for Admission), at 1. Defendants, including Tim Littell, responded, "Admit". *Id.* Ascentium then asked Defendants to "Admit that the photographs sent by Defendants' counsel to Plaintiff's counsel in an email dated April 12, 2021, fairly and accurately represent the damage that Defendants believe was caused to the vehicles seen in those photos during the repossession process." *Id.* at 1-2. Defendants responded, "Deny". *Id.* at 2.[2]

Ascentium then asked Defendants to produce the "anonymous letters, its envelope and included photos that Tim Littell received in the summer of 2020 pertaining to repossessed busses being located in St. Louis Missouri." Doc. 57-7 (Defendants' Objection and Responses to Ascentium's Second Requests for Production of Documents), at 3. Defendants responded, "will supplement". *Id.* Ascentium also asked Defendants to produce "All video recordings of the repossession of the three busses at issue in this lawsuit." *Id.* Defendants responded, "will supplement." *Id.* However they did not do so voluntarily.

---

[2] Although the Defendants denied this Request for Admission, they did not say that the photos were not of damage to the busses. Both individual Defendants testified at their depositions under oath that the damage exceeded what was shown in the photographs.

7

On August 26, 2021, this Court held a teleconference and ordered "defendants to produce requested discovery documents that defendants previously agreed to provide" and "all documents related to the repossession of collateral that are not subject to attorney-client privilege." *See* Doc. 36 (Teleconference Minute Entry). Defendants then supplemented their discovery responses. *See generally* Doc. 57-5 (Defendants' Supplemental Responses to Plaintiff's Second Requests for Production). Defendants stated, "Upon investigation, the envelope is no longer in my possession and its whereabouts are unknown. The photos have already been produced to counsel." *Id.* at 2. They also stated, "Upon further investigation, it appears the video system recorded over itself and, therefore, the video is no longer in my possession." *Id.*

### C. Further Investigation by Ascentium

In September of 2021, Defendants hired an independent consultant to examine their video security system. *See generally* Doc. 63-3. He signed an affidavit stating:

> I have examined the video camera system at the business address for White Knight Limousine. Although Tiger Security did not install it, I am familiar with this system . . . The video is saved to an internal hard drive. Once the drive is full, it begins to overwrite the oldest clips with new video. Some of the cameras at White Knight are set to record almost continuously. The recording settings, coupled with the size of the hard drive, means video recordings are overwritten in perhaps 2 to 3 weeks. *Id.*

Sometime after receiving the photographs, Ascentium engaged its in-firm technology team to review the metadata associated with the produced photographs. The metadata showed that these photos were taken on either June 27, 2019, or May 30, 2018—well before the busses were repossessed on May 24, 2020. *See* Doc. 57-6 (Plaintiff's metadata showing the dates the files were created); Doc. 63-2 (Defendants' metadata showing the same dates). Additionally, the metadata says all but one of the photographs were taken on an iPhone 7. *See* Doc. 57-6 (stating the "Device" is an iPhone 7); Doc. 63-2 (listing "camera maker" and "camera model" as Apple iPhone 7).

8

## D.    Motion for Sanctions

Based on this scientific evidence, Ascentium filed a motion for sanctions on September 29, 2021   Doc. 56.  Defendants responded on October 13, 2021.  Doc. 63.  In Defendants' response brief, Defendants did not confirm or deny that Tim Littell received the produced photographs, or a note, from an anonymous source.  *Id.*  Defendants did acknowledge that the metadata showed the photographs were not taken after repossession and Defendants agreed not to introduce the photographs into evidence.  *Id.* at 3.  Defense Counsel also represented to the Court and Ascentium that because the metadata showed the photographs were not taken contemporaneously with the repossession of the collateral…. [a]ny pertinent discovery will have to be amended."  Doc. 63, at 3.

## E.    Evidentiary Hearing

After briefing on the Motion for Sanctions finished, the Court held a teleconference to determine if either party wanted an evidentiary hearing.  Doc. 72 (docket entry setting the evidentiary hearing).  Plaintiff's Counsel stated they did not feel a hearing was necessary, but Defense Counsel requested a hearing which was surprising.

At no time prior to the evidentiary hearing or since, did Defendants amend any of their discovery responses even though Defense Counsel had represented [a]ny pertinent discovery will have to be amended."  Doc. 63, at 3.

At the hearing, both Tim and Ted Littell testified under oath.  Tim Littell reaffirmed that he received an anonymous note and photographs in the mail that showed the busses were damaged and sitting in a lot in St. Louis.  He conceded that the photographs he produced during discovery preceded the repossession.  He also admitted that in his discovery response, he stated that the photographs he produced before his deposition were the photographs he received anonymously.

9

He admitted that discovery response was incorrect. Then, for the first time, Tim Littell indicated that the photographs he produced during discovery were not the ones he received anonymously but rather were photos from an earlier insurance claim.

Tim Littell reaffirmed that he had seen the video tape of the repossession. He stated that he previously testified that he probably saw the video tape in November—which was months after it had been recorded over—because he was guessing during the deposition. Both Tim and Ted Littell stated that they had no evidence that Ascentium damaged the busses during repossession beyond a witness who saw the busses being towed.

### F. Bad Faith Findings

#### 1. Photos

Based on the above evidence the court finds that: (1) the photographs Tim Littell produced were taken by an iPhone 7, years before the repossession, and were electronically transmitted; (2) Tim Littell lied at the evidentiary hearing when he said he accidentally sent the wrong photographs to Plaintiff; (3) he told this lie to cover up his previous misrepresentations; (4) Tim Littell intentionally misrepresented at his deposition, and in discovery responses, that he received the produced photographs, and a note, from an anonymous source; (5) Tim Littell never received these photographs or a note from an anonymous source; (6) Tim Littell misrepresented the source of these photographs to improperly bolster Defendants' affirmative defense; (7) there is no evidence that Defendants destroyed the videotape or knowingly let it be recovered over; (8) Defendants' discovery responses regarding the videotape were not unreasonable; (9) there is not clear and convincing evidence that Tim Littell lied about having seen a recording of the repossession during his deposition; (10) there is not clear and convincing evidence that White Knight, Ted Littell, or

10

Defense Counsel were aware that Tim Littell was lying or knowingly helped Tim Littell further his lies.

   As for the photos given to Ascentium's counsel during discovery, the Court finds that Tim Littell intentionally produced insurance claim photos during discovery for the purpose of trying to manufacture evidence that Ascentium damaged White Knight's buses during repossession.

   During discovery, Tim Littell repeatedly represented that he had recently received photos from an anonymous source that showed damage to the repossessed busses and that he had scanned those anonymous photos and electronically sent them through his counsel to Ascentium. Yet there is irrefutable evidence that these "anonymously received photos" were taken on an I-Phone 7 many months before the repossession. *See supra* Section III.C.

   After Tim Littell was caught in this lie, his counsel requested an evidentiary hearing on Ascentium's Motion for Sanctions. At that hearing, for the first time, Tim Littell testified that the photos he scanned and sent to defense counsel were not the photos he received anonymously in the mail. Instead, they were photos from an insurance claim for damages to the buses that had occurred long before the repossession. At no time prior to the evidentiary hearing, did Tim Littell update his discovery responses to alert Plaintiff's Counsel that he had accidentally scanned and sent photos from an old insurance claim instead of the "anonymously received" photos; something that would be expected if someone had made a good faith mistake.

   His latest explanation about accidentally sending the wrong photos, is also inconsistent with his deposition testimony. In his deposition, while purportedly describing the anonymously received photos, he stated: "The photos showed that it had significant body damage to it . . . . The bumper had been damaged significantly. The side of the passenger side had been damaged significantly. The rear of the bus had some damage to it, as well." *Id.* at 59:14-20. Doc. 57-3, at

21-24. If Tim Littell actually thought he was describing the anonymously received photos and not the insurance photos, how could he describe the damaged busses portrayed in the insurance claim photo? At the hearing, he explained that the reason he sent the "photographs" was to help orient himself to what bus was being discussed during the deposition because a lot of busses had been repossessed recently by other creditors. But at the deposition, he never asked to see the photo that was being discussed. Rather, he competently and without hesitation chose to emphasize the damage to the busses in the insurance claim photos. He has never produced the anonymous photos or even described the specific damage observed in the anonymous photos and it is incredible to think that the damage in each photo is the same.

Nor has Tim Littell explained how this supposed accident could have occurred. Indeed, on direct examination, he never even said he accidentally sent the insurance photos instead of the anonymously sent photos. Instead, he said both sets of photos were discussed in his deposition which is clearly untrue. It was not until cross examination when his attorney asked him if he thought he was sending the anonymous photos when he sent the insurance photo, did he say yes. Further, in his deposition testimony he stated that he had scanned and sent the photos a "few days ago". Doc. 57-3, at 63:15-18. If this testimony is true, how did he accidentally choose the wrong photos to send just days before the deposition and not notice in preparation for the deposition or during the deposition that he was talking about the wrong photos?

Nor has Tim Littell provided a believable explanation for what happened to the anonymous note and the accompanying photos which purportedly described extensive damage to the repossessed busses. If he scanned the anonymously received photos as he testified and if he actually thought he was sending the anonymous photos to Defense Counsel, the anonymously received photos must have been electronically available. Yet Tim Littell never produced the

12

anonymously received photos. He did not produce them at the evidentiary hearing or in his opposition to the Motion for Sanctions. When asked to produce the anonymously received photos during the discovery process, defendants responded "will supplement." Doc. 57-7, at 3. Defendants, however, did not supplement until after the Court ordered the defendant to supplement. Even then Defendants' response was "the photos have already been produced to counsel". To date the "anonymously received photos" have never been produced and no believable explanation has been given as to what happened to them. Indeed, there is no explanation because no photos were ever received anonymously by Tim Littell. He fabricated that story so he could pass off the insurance photos as evidence that the buses had been damaged. He just never counted on the thing he could not see–metadata.

Also, Tim Littell had a motivation for his lies which was to effectively manufacture evidence to support Defendants' affirmative defense that Ascentium failed to mitigate its damages. When talking about the photograph and the note at his deposition, Tim Littell highlighted that this evidence showed the busses were damaged. Tim Littell stated that after White Knight's busses were repossessed, these photographs were sent with an accompanying note that said White Knight's busses "look extremely damaged" and were being towed. Doc. 57-3, at 65. The fact that Tim Littell highlighted that the photographs and note showed the busses were damaged is further evidence that the photographs were introduced for the purpose of showing this damage; they were not just as a tool to keep straight what bus was being discussed during the deposition.

### 2. Video Tape

As for the missing videotape, the Court does not find clear and convincing evidence that the Defendants destroyed the videotape. Defendants produced an affidavit showing the videotape was likely recorded over 2 to 3 weeks after it originally taped. Doc. 63-3. There is no evidence

13

in the record which shows that Defendants were aware of, or should have been aware of, this fact. There is also no evidence that Defendants were on notice to preserve this videotape for litigation because the notice of default was not sent, and the Complaint was not filed, until long after the video was recorded over in the middle of June 2020. See Docket Entry 1 (showing the Complaint was filed November 3, 2020); Doc. 57-9 (showing the Notice of Default was sent September 24, 2020).

There is also no clear and convincing evidence that Tim Littell intentionally misrepresented when he last saw the security video during his testimony. When Tim Littell was asked when he last saw the video he answered, "It's been several months", and when Plaintiff's Counsel followed up, he stated, "Oh I don't know, more than three" but probably not more than five. Doc. 57-3, at 68:17-23. It was not possible that Tim Littell saw this video three to five months prior to his April 2021 deposition, since it was deleted in June of 2020. *See* Doc. 63 (Affidavit showing the videotape was recorded over two to three weeks after the May 24, 2020 repossession). But Tim Littell's answer is notedly ambivalent. His first answer is vague saying it has been "several" months and his next answers starts off with "I don't know." And at the evidentiary hearing he made clear that this was just a guess. Consequently, there is not clear and convincing evidence that Tim Littell purposefully misrepresented when he had last seen the videotape.

Nor were Defendants' discovery responses regarding the videotape unreasonable. After Tim Littell's deposition, Ascentium asked for a copy of the videotape of the repossession, and on June 2, 2021, Defendants stated they "will supplement" their discovery. Doc. 57-7, at 3. Defendants supplemented their response to Ascentium by stating, "Upon further investigation, it appears the video system recorded over itself and, therefore, the video is no longer in my possession." Doc. 57-5, at 2. Ascentium has argued these discovery responses were not

14

reasonable, but there is no record of what type of search Defendants did before responding that they "will supplement" their response to the request for production. Additionally, Defendants' response that the videotape was recorded over is corroborated by an affidavit from an independent security consultant. Doc. 63-3.

There is also not clear and convincing evidence that Ted Littell, White Knight, or Defense Counsel knew Tim Littell was lying. Defense Counsel certified discovery responses that were submitted on behalf of all Defendants which: admitted that the photographs sent to Ascentium's Counsel were photographs Tim Littell received anonymously; stated that the photographs Tim Littell received anonymously were already produced; and stated the anonymous note which accompanied the photographs had been lost. As explained above, all of these discovery responses were false. However, Ascentium has produced no clear and convincing evidence to show that either White Knight, Ted Littell, or Defense Counsel were aware that these discovery responses were false when they were submitted or that Defense Counsel acted unreasonably before certifying these responses. Furthermore, there is no evidence that any of them directed Tim Littell to take these actions.

IV.    **Conclusions of Law**

A.    **Whether Defendants Should be Sanctioned for Repeatedly Lying About the Photographs**

Under its inherent authority, the Court will sanction Defendant Tim Littell for his repeated lies concerning the photos at issue. As stated above, a court can sanction a party under its inherent authority if it finds by a clear and convincing evidence that the party acted in bad faith. *See, Martin v. DaimlerChrysler Corp*, 251 F.3d 691, 694-95 (8th Cir. 2001)).

Tim Littell lied about receiving photographs and a note from an anonymous source during his deposition. He lied at his deposition when he stated that the photos he had produced were from

15

an anonymous source. He lied when he admitted in a discovery response that the photographs he produced were from an anonymous source. He lied when he reaffirmed in a later discovery response that he had produced these anonymous photographs. And he lied when he stated in a discovery response that he had the anonymous note. He told these lies to deceive Ascentium and to try to manufacture evidence that Ascentium had damaged White Knight's buses during repossession.

After being confronted with evidence that Tim Littell had been lying, Defense Counsel requested an evidentiary hearing where Tim Littell told a new lie under oath to the Court and Ascentium's counsel in an attempt to cover up his previous lies.

This is clearly bad faith conduct and severe sanctions are warranted. *E.g.*, *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (upholding sanction under the district court's inherent authority and FRCP 37(e) when the offending party "repeatedly lied during the discovery process").

Defendants argue that sanctions cannot be awarded because Ascentium was not prejudiced by this conduct. For reasons stated below, Ascentium was prejudiced by this conduct.

However, the Court will not sanction Defendants Ted Littell, White Knight, or Defense Counsel for Tim Littell's misconduct because there is not clear and convincing evidence that any of these Parties acted in bad faith.

**B. Whether Defendants Should be Sanctioned for Recording Over the Video**

Because the Court has found that there is not clear and convincing evidence to show that the Defendants acted in bad faith with regards to the video tape, sanctions are not appropriate.

**C. Appropriate Sanctions**

**1. Striking Tim Littell's Pleadings**

As stated above, the Court has the inherent authority to strike Tim Littell's pleadings, such that Ascentium would be entitled to default judgment, if it can be shown by clear and convincing evidence that Tim Littell acted in bad faith and that lesser sanctions would be insufficient. *See Martin v. DaimlerChrysler Corp*, 251 F.3d 691, 694-95 (8th Cir. 2001). As shown above, there is clear and convincing evidence that Tim Littell acted in bad faith and should be sanctioned.

In its motion, Ascentium requested the following sanctions: default judgment, the striking of Tim Littell's pleadings, recovery of all of its attorney's fees, recovery of all attorney's fees spent dealing with the sanctionable conduct, and an order precluding Defendants' argument that the vehicles were damaged during repossession. The Court finds that the appropriate sanction is to strike Tim Littell's pleadings and enter a default judgment against Tim Littell because of the severity of Tim Littell's misconduct, the prejudice caused to Ascentium, the need to deter future misconduct, and the Court's lack of faith that Tim Littell can be relied on in the future to be truthful even when he is under oath and subject to penalties for perjury.[3]

**a. Prejudice and Tim Littell's Culpability**

The prejudice to Ascentium and Tim Littell's culpability are substantial. As a result of Tim Littell's misconduct Ascentium paid attorney's fees to: seek production of the note; analyze

---

[3] As discussed below, the Court will also award attorney fees and expenses spent dealing with Tim Littell's sanctionable conduct.

the photographs' metadata; seek sanctions for Ascentium's conduct and participate in an evidentiary hearing. More importantly, Ascentium only avoided further prejudice because Tim Littell was caught. Tim Littell tried to convince Ascentium, and a future jury, that there was evidence that Ascentium's busses were damaged during repossession. If this lie had not been uncovered, a jury could have been deceived and Ascentium's damages could have been reduced for failure to mitigate damages. The fact that Ascentium was caught, does not relieve Tim Littell of culpability for trying to defraud Ascentium and the Court.

Additionally, this is not a one-time offense. As noted above, Tim Littell lied, under oath, on at least four separate occasions. He was given multiple chances to correct his mistake and show remorse. He decided instead to dig himself a deeper hole. The extreme nature of Tim Littell's misconduct is clear and convincing evidence that a lesser sanction would be an insufficient punishment. *See Pope v. Fed. Exp. Corp.,* 974 F.2d 982, 984 (8th Cir. 1992) ("Pope's suit was based on the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct. When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court."); *Martin*, 251 F.3d at 694 (upholding District Court's decision to dismiss Plaintiff's claim when it found Plaintiff had willfully withheld information in interrogatory responses and deposition testimony); *see also Garcia v. Berkshire Life Ins. Co. Of Am.,* 569 F.3d 1174, 1180 (10th Cir. 2009) (listing the "actual degree of prejudice to the defendant" and the "culpability of the litigant" as two of the four factors to consider when determining whether to dismiss a case for abusive litigation practices); *United States v. Reyes*, 307 F.3d 451, 458 (6th

Cir. 2002) (listing "whether the adversary was prejudiced" as one of four factors for the Sixth Circuit to consider when deciding whether dismissal was an appropriate sanction).

### b. Deterrence

Second, any lesser sanction would be insufficient to deter future misconduct. In *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir. 1999), the Eighth Circuit held that a sanction of default judgment was warranted "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent." *See also Garcia*, 569 F.3d at 1180 ("Nor is the exclusion of the fabricated evidence always enough to deter discovery misconduct. Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues").

Defendants argue that because they have withdrawn the photographs from the record, no further sanction is required. However, precluding the use of these photographs would only put Tim Littell in the same position he was in before he introduced them. In the same vein, if the Court were only to award Ascentium the fees it spent uncovering this fraud, it would only be restoring the Parties to where they were before Tim Littell's sanctionable conduct. Such sanctions would be too insignificant to deter future misconduct because a savvy party could always try to misrepresent or manufacture evidence with the knowledge that their only punishment for their first offense would be to return the parties to the status quo. Such a punishment would rarely outweigh the potential financial rewards from introducing fake evidence.

Thus, the Court finds the only sanction severe enough to deter future misconduct by Tim Littell and others, is to strike Tim Littell's pleadings and enter default judgment.

### c. Erosion of Trust

Third, this sanction is required because Tim Littell's repeated and consistent lies have eroded this Court's trust that he has honestly participated in the discovery process or that he would truthfully participate in further proceedings.

In *Chrysler*, the district court stated it was dismissing the case because the Judge "no longer ha[s] faith in the adversary system being conducted according to the rules... I have lost faith in the discovery rules being followed in this case. I have no faith that they have been followed, and I don't know what else has been concealed. That is why I am imposing the sanction." 186 F.3d at 1021. The Eighth Circuit upheld this decision because "[t]he efforts by [Defendants] to deny and conceal evidence, and to provide false and misleading testimony, seriously threatened the integrity of the trial as well as the judicial process in general." *Id.*; *see also Garcia*, 569 F.3d at 1180 (listing the "the amount of interference with the judicial process" as one of the factors to consider when determining whether to dismiss a case for abusive litigation practices). While the procedural posture is slightly different here—in *Chrysler* there had already been four days of trial and in this case dispositive motions are still being litigated—the concept applies equally to Tim Littell. Due to Tim Littell's repeated abuses of the judicial process, the Court can no longer trust that Tim Littell has honestly participated in the discovery process such that any of his previous testimony or discovery responses are truthful. Nor can it trust that he would not commit further perjury at trial. This creates the distinct possibility that any adjudication of Ascentium's claim would not be honestly or fairly decided. Consequently, the only sufficient sanction is to strike Tim Littell's pleadings and enter a default judgment in favor of Ascentium on both liability and damages. Ascentium has four weeks to provide evidence of the current amount of damages to be included in a default judgment against Tim Littell.

### 2. Attorney's Fees

The Court will also award Ascentium all reasonable fees that were expended because of Tim Littell's sanctionable conduct. Such an award is necessary to ensure that Ascentium is fully compensated for the harm it incurred because of Tim Littell's sanctionable conduct. Ascentium has four weeks from the date of this order to submit proof of the amount of these fees and any evidence that these expenses were reasonable.

## VI.  Conclusion

For the reasons discussed above, the Court strikes all pleadings filed by Tim Littell and enters a default judgement against him. The Court also awards Ascentium all reasonable fees that were expended because of Tim Littell's misconduct. Ascentium must file proof of its reasonable fees to this Court within four weeks; and Ascentium has four weeks to provide evidence of the current amount of damages to be included in a default judgment against Tim Littell.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 22, 2021
Jefferson City, Missouri

21